IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CLAUDE GELINAS,**

    **Plaintiff,**

**v.**        **No.**

**PRESBYTERIAN HEALTHCARE SERVICES, INC.**

    **Defendants.**

**PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT, BREACH OF IMPLIED CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS, TORTIOUS INTERFERENCE WITH A PROSPECTIVE CONTRACTUAL RELATIONSHIP, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND PRIMA FACIE TORT**

COMES NOW, the Plaintiff, Claude Gelinas, M.D., by and through his attorneys, Michael L. Danoff and Ryan P. Danoff of Michael Danoff & Associates, P.C., and for his Complaint against Presbyterian Healthcare Services, Inc. for Violations of the Sherman Antitrust Act, Breach of Implied Contract, Tortious Interference with Existing Contractual Relationships, Tortious Interference with a Prospective Contractual Relationship, and Prima Facie Tort states the following:

**GENERAL ALLEGATIONS**

1. Plaintiff Claude Gelinas, M.D., (hereinafter referred to as "Plaintiff") is a resident of Albuquerque, New Mexico.

2. Upon information and belief, Defendant Presbyterian Healthcare Services, Inc. (hereinafter referred to as "Defendant") is a New Mexico not-for-profit corporation with its principal place of business in Albuquerque, New Mexico.

3. Upon information and belief Defendant owns and operates Presbyterian Hospital, located in Albuquerque, New Mexico.

4. All matters relevant to this Complaint took place in the City of Albuquerque and the State of New Mexico.

5. Jurisdiction and venue is proper in the United States District Court for the District of New Mexico pursuant to 28 U.S.C.A. § 1331 because this matter involves a federal question.

6. The amount of damages being sought is in excess of $75,000.00.

7. Plaintiff is a licensed spinal surgeon, whose medical license is in good standing.

8. Plaintiff has been engaged in the private practice of medicine for 15 years.

9. Plaintiff has been licensed to practice medicine in New Mexico since 1997.

10. Plaintiff was given medical privileges to perform medical services at Presbyterian Hospital in Albuquerque, New Mexico in 1997.

11. Plaintiff provided medical services at Presbyterian Hospital from 1997 until 2010 without incident.

12. The standard time period for the appointment and reappointment of privileges at Presbyterian Hospital is two (2) years.

13. Plaintiff submitted a Reappointment Application which was considered in January, 2009.

14. Plaintiff's reappointment was approved for one year, from March 23, 2009 through February 1, 2010.

15. Plaintiff submitted another Reappointment Application for privileges at Presbyterian Hospital on October 28, 2009.

16. On January 19, 2010, a hearing before the Credentials Committee was held with regard to Plaintiff's Reappointment Application.

17. Following the January 19, 2010 hearing, the Credential Committee did not recommend Plaintiff for reappointment.

18. In a letter dated January 26, 2010, Plaintiff was notified by Dr. Paul Cochran, Interim Vice President of Medical Staff Affairs for Presbyterian Healthcare, that the Presbyterian Medical Executive Committee was denying Plaintiff's application for reappointment.

19. In the January 26, 2010 letter denying Plaintiff's application for reappointment, Dr. Paul Cochran stated that the Medical Executive Committee's "…decision was based upon information gathered during the privileging process…" and Plaintiff's alleged "…history of disruptive and inappropriate or discourteous conduct towards other members of the medical staff and other clinical staff of the hospital."

20. Dr. Cochran's letter did not raise any concerns as to Plaintiff's skill, ability, or competence as a physician.

21. Plaintiff subsequently appealed the decision of the Presbyterian Medical Executive Committee by requesting a hearing under Article III of the Medical Staff Bylaws.

22. In a letter dated May 27, 2010 from Dr. Cochran, and David Arredondo, MD, President of the Medical Staff of Presbyterian Hospital, to Plaintiff, Dr. Cochran and Dr. Arredondo made false and inaccurate statements regarding alleged complaints by a patient against Plaintiff.

23. In a response letter from Plaintiff to Dr. Cochran dated June 7, 2010, Plaintiff addressed and refuted all of the false allegations contained in Dr. Cochran's May 27, 2010 letter.

24. Plaintiff also addressed the use of his physician assistant and addressed the fact that Plaintiff's use of his physician assistant is an accepted practice and is employed by the majority of doctors in the Presbyterian Hospital System.

25. Plaintiff's June 7, 2010 letter raised his concerns about Defendant, and in particular Dr. Cochran's continuous attempts to revoke his privileges based on assertions of baseless allegations without any factual support and the hostile work environment that had been created as a result of Defendant and Dr. Cochran's behavior towards Plaintiff.

26. Defendant failed to further investigate the allegations contained in Dr. Cochran's May 27, 2010 letter and instead relied on Dr. Cochran's false allegations in support of its decision to revoke Plaintiff's privileges.

27. On June 24, 2010, the Professional Activities Committee (hereinafter referred to as "PAC") conducted a hearing with Plaintiff to address Plaintiff's appeal of the Presbyterian Medical Executive Committee's decision denying Plaintiff's Reappointment Application.

28. After the June 24, 2010 hearing, the PAC submitted a Report of Professional Activities Committee to Medical Executive Committee (hereinafter referred to as the "Report").

29. In the Report, under a section entitled "Findings of Fact," the PAC made the following allegations:

    a. "Member has not demonstrated recognition issues brought to his attention through this process."

    b. "Member has not addressed his conduct issues in good faith".

    c. "Member has not responded to efforts of conduct modification".

    d. "Member has a pattern of disruptive conduct".

    e. "Member had demonstrated disrespectful conduct".

    f. "Member had sufficient notice of his previous one year Credentials term."

    g. "Member has not shown himself to be a responsible member of the Medical Staff".

      h.   "Member does not use his Physician Assistant appropriately."

      i.   "Member's conduct poses a potential threat to patient safety."

30.    The Report's "Findings of Fact" section contained factual inaccuracies.

31.    Defendant failed to meaningfully investigate its allegations in order to determine whether or not its allegations were accurate.

32.    Members of the Presbyterian Medical Executive Committee, who have a personal dislike for Plaintiff, have abused their position of power by revoking his privileges at Presbyterian Hospital based on baseless allegations.

33.    Defendant referenced two (2) alleged patient complaints, which Defendant, and in particular the Medical Review Board, relied on in support of its decision to terminate Plaintiff's privileges.

34.    Defendant never interviewed nor followed up with the two (2) patients who made the alleged complaints.

35.    Plaintiff has always put his patient's best interest and safety as his top priority when rendering care to a patient.

36.    The first patient, Mr. Carl Stenger, did not have any complaints regarding the medical care provided by Plaintiff.

37.    Mr. Stenger did take issue and had some concerns with care rendered to him at Presbyterian by the cardiovascular unit, but did not take issue with Plaintiff's care.

38.    The second patient, Manuel S. Moncayo, involved a complaint in which Plaintiff met with Mr. Moncayo and rendered a professional opinion in the best interest of the patient.

39.    That Patient, upon the recommendation of Plaintiff, eventually had the procedure successfully done in Arizona.

40. Defendant alleges that Plaintiff used his Physician Assistant in violation of the Presbyterian Bylaws, however, Defendant failed to acknowledge that the majority, if not all doctors at Presbyterian Hospital use their Physician Assistant in the same manner, and were not disciplined or reprimanded for such use.

41. Defendant, in the revocation process stated that Plaintiff's attitude and communication with others impedes and affects patient care, however, Plaintiff had no communication issues with any personnel that at any point did or could have jeopardized patient care.

42. On January 19, 2011 Plaintiff received a letter from the Presbyterian Central New Mexico Community Board of Trustees regarding Plaintiff's appeal of the decision of Presbyterian Central New Mexico Community Board of Trustees decision not to renew Plaintiff's privileges at Presbyterian Hospital.

43. Subsequent to Defendant revoking Plaintiff's privileges, Defendant recognized that Plaintiff is a skilled physician and well regarded surgeon.

44. The January 19, 2011 letter stated: "As we have noted before your technical skills as a physician were not at issue and your surgical skills continue to be well regarded among our staff members."

45. Defendant at no point during the revocation process stated that Plaintiff was an incompetent surgeon and/or was not a qualified doctor that could provide quality healthcare.

46. Defendant revoked Plaintiff's privileges based on allegations that his conduct posed a threat to patient safety.

47. Plaintiff relied on the medical review processes and the system in place to investigate and determine the true facts surrounding his privileges at Presbyterian Hospital.

48. That a thorough investigation regarding the revocation of Plaintiff's privileges was not done.

49. Defendant failed to follow its own Bylaws in revoking Plaintiff's privileges.

50. Defendant's illegitimate actions were taken under the guise of furthering quality health care.

51. Defendant's actions did not further quality healthcare, but instead put the public at risk of not receiving the best quality health care available by prohibiting Plaintiff from operating on any patient insured by Defendant.

52. Defendant intentionally and unlawfully interfered with Plaintiff's right to pursue and practice a lawful calling and trade.

53. As a result of Defendant's arbitrary and capricious revocation of Plaintiff's privileges, the Plaintiff has suffered and will continue to suffer significant pecuniary damages.

54. Defendant alleged that Plaintiff did not use his physician assistant appropriately.

55. Plaintiff used his physician assistant in the same manner that the majority, if not all physicians at Presbyterian Hospital use their physician assistants.

56. Defendant was selectively reprimanded under the guise that he did not use his physician assistant appropriately.

57. Defendant asserted during the medical review process that Plaintiff's privileges were not being renewed because of Plaintiff's use of his Physician Assistant was not appropriate.

58. Specifically, Defendant alleges that Plaintiff allowed his Physician Assistant to work outside the scope for which a Physician Assistant is authorized under the Presbyterian Hospital Bylaws

59. That other doctors on the medical staff used their Physician Assistant in the same manner and committed the same disciplinary violations as Plaintiff and were not similarly reprimanded.

60. In the Professional Activity Committee's Report, Defendant states in the section titled "Nature of the Problem that Plaintiff "be denied privileges based on a pattern of reoccurring conduct issues….[H]is subsequent actions after receiving two Driving While Intoxicated citations in the past seven years."

61. While Defendant makes it clear that this fact was considered in Privileges review Process, Defendant never acknowledged that this fact was premature and Plaintiff was never convicted of a second Driving While Intoxicated citation.

62. Defendant, as a result of the false allegation, considered Plaintiff to have a pattern of reoccurring negative conduct.

63. Defendant relied on these untrue allegations and misleading facts in determining that Plaintiff's privileges should not be renewed.

64. That members of the Medical Executive Committee had a personality conflict with Plaintiff and a personal vendetta against Plaintiff.

65. As a result of this personal dislike for Plaintiff, Defendant selectively reprimanded Plaintiff and did not discipline or reprimand other members of the medical staff for similar conduct.

66. That Defendant made false and inaccurate allegations about Plaintiff regarding patient care and patient safety in an attempt to justify Defendant's willful and malicious conduct.

67. Defendant stated that Plaintiff's "attitude and communications with others impedes affective coordination and delivery of patient care" yet none of the communication alleged and referred to by Defendant between Plaintiff and other physicians was shown to be related in any way to patient care.

68. That Defendant maliciously revoked the privileges of Plaintiff and violated Defendant's own Bylaws that were in place to protect the rights of Plaintiff.

69. That Plaintiff's privileges were terminated based on the personal dislike of Plaintiff by several members of the Medical Executive Committee.

70. Plaintiff is recognized by Defendant as a well regarded surgeon who is not incompetent.

71. Defendant breached their duty by failing to properly investigate the alleged claims and contact the patients.

72. Had Defendant contacted the patients involved in the two allegations, Defendant would have realized that Plaintiff was acting in the best interest of the patient and posed no threat to patient care or safety.

## COUNT 1: VIOLATIONS OF THE SHERMAN ANTITRUST ACT

73. Plaintiff re-alleges each and every allegation contained in this Complaint as if fully pled herein.

74. Presbyterian Hospital is the largest provider of health care in the State of New Mexico.

75. Defendant owns and operates eight (8) hospitals throughout the State of New Mexico.

76. The Presbyterian Medical Group offers care at more than thirty (30) different locations throughout the state.

77. Each year, Presbyterian clinics handle more than one million, two-hundred thousand (1,200,000) patient visits.

78. Prior to the events giving rise to this lawsuit, Plaintiff served a significant percentage of the spine and back surgery patients in the relevant market.

79. The only way a surgeon, such as Plaintiff, may access facilities, such as Defendant's hospital, is by gaining credentials and privileges at each facility.

80. Plaintiff treated a substantial percentage of his patients at Defendant's hospital.

81. Defendant holds a dominant position in the healthcare and health services market.

9

82. Prior to his privileges being revoked, Plaintiff generated a substantial part of his income from operating and the use of his privileges at Presbyterian Hospital.

83. Defendant insures a significant portion of residents of the State of New Mexico.

84. As a result of Defendant's large market share of insured individuals in the State of New Mexico, Defendant possesses exclusive access to an element essential to effective competition in the relevant market.

85. After Plaintiff's privileges were denied, in an effort to mitigate his damages, Plaintiff attempted to operate at other hospitals and healthcare facilities in and around New Mexico that accepted patients insured by Presbyterian Healthcare.

86. Defendant subsequently terminated the ability of Plaintiff to operate, consult, and/or perform medical services for individuals insured by Presbyterian Healthcare.

87. Defendant's refusal to allow Plaintiff to operate, consult, and/or perform medical services for individuals insured by Presbyterian Healthcare was intended to have an anticompetitive effect.

88. The actions and conduct of Defendant have had and will continue to have predominantly anticompetitive effects on Plaintiff, the patients Plaintiff provided healthcare services for and potential patients that could have benefitted from Plaintiff's healthcare services.

89. The actions and conduct of Defendant imposed an unreasonable restraint on competition by not only denying Plaintiff privileges to perform medical services at the largest hospital in the State of New Mexico, but also by denying Plaintiff the ability to provide medical services for any individual insured by Defendant at any and all facilities throughout the country.

90. There are only a few doctors that possess the skill and training of Plaintiff and that specializing in the type of procedure Plaintiff utilizes in his operations.

91. It is in the best interest of the public for Plaintiff to be able to operate on individuals that could benefit from his specialized medical services.

92. Plaintiff's loss of his privileges and termination of his ability to operate on individuals insured by Defendant has had detrimental effect on competition because it has restricted the choice of patients that need spinal surgery.

93. As a result of Defendant's actions, consumers will suffer because the market make-up changed as a result of inefficient anticompetitive means resulting from Defendant's actions.

94. That Defendant conspired to terminate the privileges of Plaintiff based on false and meritless allegations which unreasonably restrained competition in the relevant marketplace.

95. Defendant failed to properly and reasonably investigate the allegations made against Plaintiff.

96. Defendant misused the peer review process to terminate the privileges of Plaintiff.

97. Defendant illegitimately terminated Plaintiff's privileges under the guise of furthering the quality of health care in order to achieve anticompetitive purposes.

98. As a result of Defendant terminating Plaintiff's privileges and terminating Plaintiff's ability to perform medical services for persons insured by Defendant, consumers in this market will have difficulty securing comparable services.

99. That due to Defendant's breach of its duty and obligation to reasonably investigate all allegations and facts associated with its privilege revocation process, Plaintiff's privileges were terminated and he could no longer perform his professional trade at Presbyterian Hospital.

100. Plaintiff's damages have been proximately caused by Defendant's conduct.

101. The Plaintiff's demand for relief ultimately serves the purposes of antitrust law to increase consumer choice, lower prices for consumers, and assist competition, not competitors.

102.   The Defendant's actions will have a detrimental effect on healthcare patients by decreasing the number quality of surgeons from patients to choose from.

103.   Defendant improperly used the peer review process in order to drive Plaintiff out of the market which ultimately harmed competition.

104.   Defendant directly interfered with Plaintiff's existing and potential patients, including those with "high risk" medical needs to prevent them from exercising free choice in the market.

105.   Defendant's revocation of Plaintiff's privileges has prevented and will continue to prevent patients from receiving the best medical care possible.

106.   Defendant unreasonably excluded Plaintiff from the relevant market through adverse and unfair peer review proceedings, affected patient choice and concurrently, interfered with competition in the marketplace.

107.   Defendant used its leverage to induce or force their spine patients to use their approved surgeons and/or not to use Plaintiff even though it may have compromised patient care.

108.   That as a direct result of Defendant's willful action, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT II:
## BREACH OF IMPLIED CONTRACT

89.   The Plaintiff re-alleges each and every allegation contained in this Complaint as if fully pled herein.

90.   There was an implied contract between Defendant and Plaintiff that Defendant would follow a particular procedure in the privileges revocation process.

91.   There was a promise and representation that created a reasonable expectation in the mind of Plaintiff that Defendant would follow particular defined and established personnel procedure/bylaws regarding revocation of privileges at Presbyterian Hospital.

92. Defendant breached the implied contractual agreement by failing to follow the Defendant's own procedures established in Defendant's Bylaws in revoking Plaintiff's privileges.

93. Defendant ignored Plaintiff's rebuttal of Defendant's allegations and Defendant did not further investigate its allegations after receiving a response from Plaintiff.

94. Defendant breached the implied contractual agreement by not fully investigating the allegations made against Plaintiff in order to find out whether or not the allegations were in fact true.

95. The actions of Defendant were willful, wanton, reckless disregard of the Plaintiff and of Public Policy and of Defendant's established Policy and Procedures and Guidelines and Employee rights in general which should be deterred in the future and there should be an award of punitive damages in an amount to be proven at trial.

96. Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

## COUNT III:
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

97. The Plaintiff re-alleges each and every allegation contained in this Complaint as if fully pled herein.

98. The covenant of good faith and fair dealing is an implied term to every contract, including the employment contract between Plaintiff and Defendant.

99. Defendant breached the covenant of good faith and fair dealing by knowingly and intentionally breaching the contractual agreements, as evidenced by Defendant's retaliatory harassment and revocation of Plaintiff's privileges at Presbyterian Hospital.

100. The Defendant did not act in good faith and fair dealings when it singled out and revoked Plaintiff's privileges for alleged improper use of his Physician Assistant in violation of Defendant's Bylaws when Defendant ignored substantial, credible and probative evidence of other physicians at

13

Presbyterian Hospital utilizing their physician assistants in the same manner as Plaintiff.

101. Defendant did not act in good faith or fair dealings in accordance of the standards of good faith and fair dealing under the circumstances.

102. Plaintiff suffered damages caused by Defendant's breach of the covenant of good faith and fair dealing.

103. Plaintiff was damaged as a result of Defendant's breach of implied contract.

104. Plaintiff is entitled to compensatory damages in an amount to be proven at trial,

### COUNTS VI: TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS

105. Plaintiff re-alleges each and every allegation contained in this Complaint as if fully pled herein.

106. Plaintiff had a contractual and beneficial relationship with patients who were insured by the Defendant.

107. As the insurer of these patients, Defendant had knowledge of Plaintiff's existing contracts and relationship with patients insured by Defendant.

108. Prior to his privileges being revoked, Plaintiff operated on individuals insured by Defendant.

109. The Defendant acted with an improper motive and by improper means when it revoked Plaintiff's privileges.

110. The Defendant intended to harm Plaintiff when it revoked his privileges.

111. As a result of Defendant revoking Plaintiff's privileges and no longer allowing Plaintiff to operate or provide medical services to patients insured by Defendant, Plaintiff's existing contracts were breached.

112. Defendant's revocation of Plaintiff's privileges played an active and substantial role in Plaintiff breaching the contracts with his patients.

113. Plaintiff's damages flowed from the breach of the contracts.

114. Defendant induced the breach without justification or privilege.

115. Defendant intentionally and improperly interfered with the performance of Plaintiff's contracts between Plaintiff and third persons, by preventing the Plaintiff from performing the contract or causing his performance to be more expensive or burdensome for patients.

116. Defendant terminated the privileges of Plaintiff based on false and fabricated allegations against Plaintiff made by members of the Medical Executive Committee who personally disliked Plaintiff.

117. Certain members of the Medical Executive Committee openly communicated about their personal dislike for Plaintiff.

118. Plaintiff never jeopardized the wellbeing or safety of his patients.

119. Defendant failed to properly investigate the surrounding facts and allegations made during the revocation of privileges process.

120. Defendant acted in bad faith by not fully and reasonably investigating all the facts surrounding the termination of Plaintiff's privileges.

121. Defendant turned a blind eye to certain members of the Medical Executive Committee who sought to terminate the privileges between Plaintiff and Defendant.

122. Plaintiff's medical privileges were revoked by Defendant based on allegations and misleading facts.

123. Defendant did not delineate any rationale in the medical review process that would warrant the revocation of Plaintiff's privileges.

124. Subsequent to terminating Plaintiff's privileges, Defendant terminated the Plaintiff's ability to operate on individuals insured by Defendant.

125. Plaintiff continues to be a competent and well regarded surgeon that operates on patients.

126. As a result of Plaintiff's privileges being terminated, he is unable to operate on patients at Presbyterian Hospital and has suffered substantial damages in an amount to be proven at trial.

127. That Defendant's conduct has greatly affected the ability of Plaintiff to prosper from the relationship between Plaintiff and Defendant in the future because Plaintiff can no longer operate at Presbyterian Hospital or on individuals insured by Defendant.

128. As a result of Defendant's actions Plaintiff has suffered irreparable harm to his reputation in an amount to be proven at trial.

129. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer substantial pecuniary damages in the future.

130. Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT V: TORTIOUS INTERFERENCE WITH A PROSPECTIVE CONTRACTUAL RELATIONSHIP

131. Plaintiff re-alleges each and every allegation contained in this Complaint as if fully pled herein.

132. Plaintiff had a contractual and beneficial relationship with patients who were insured by the Defendant.

133. Prior to his privileges being revoked, Plaintiff operated on individuals insured by Defendant and was scheduled to perform surgeries on patients insured by Defendant.

134. As the insurer of these patients, Defendant had knowledge of Plaintiff's existing contracts and relationship with patients insured by Defendant as well as Plaintiff's future prospective contractual relationships with patients insured by Defendant.

135. The Defendant acted with an improper motive and by improper means when it revoked Plaintiff's privileges and interfered with Plaintiff's prospective contractual relationships.

136. The Defendant intended to harm Plaintiff when it revoked his privileges and interfered with his prospective contractual relationships.

137. As a result of Defendant revoking Plaintiff's privileges and no longer allowing Plaintiff to operate or provide medical services to patients insured by Defendant, Defendant interfered with Plaintiff's prospective contractual relationships.

138. Plaintiff's damages flowed from Defendant's interference with Plaintiff's prospective contractual relationships.

139. Defendant intentionally and improperly interfered with Plaintiff's perspective contracts between Plaintiff and third persons.

140. Defendant terminated the privileges of Plaintiff based on false and fabricated allegations against Plaintiff made by members of the Medical Executive Committee who personally disliked Plaintiff.

141. Certain members of the Medical Executive Committee openly communicated their personal dislike for Plaintiff.

142. Plaintiff never jeopardized the wellbeing or safety of his patients.

143. Defendant failed to properly investigate the surrounding facts and allegations made during the revocation of privileges process.

144. Defendant acted in bad faith by not fully and reasonably investigating the allegations made against Plaintiff.

145. Defendant interfered with the consummation of Plaintiff's prospective contractual relationships with patients insured by Defendant that wanted Plaintiff to provide medical services for them.

146. As a direct result of Defendant's interference with Plaintiff's prospective contractual relationships, Plaintiff has suffered and will continue to suffer pecuniary damages in an amount to be proven at trial.

## COUNT VI:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

147. The Plaintiff re-alleges each and every allegation contained throughout this Complaint as if fully pled herein.

148. That Plaintiff's privileges were terminated based on the personal dislike of Plaintiff by several members of the Medical Executive Committee.

149. As a result of this personal dislike for Plaintiff, Defendant selectively reprimanded Plaintiff and did not discipline or reprimand other members of the medical staff for similar conduct.

150. Members of the Presbyterian Medical Executive Committee, who have a personal dislike for Plaintiff, have abused their position of power by revoking his privileges at Presbyterian Hospital based on baseless allegations.

151. Defendant attempted to disguise its illegitimate actions under the guise of furthering quality health care.

152. Defendant intentionally and unlawfully interfered with Plaintiff's right to pursue and practice a lawful calling and trade.

153. Defendant selectively reprimanded Plaintiff and continued to harass Plaintiff while Plaintiff worked at Defendant's facility.

154. Defendant's treatment of Plaintiff while he worked at Presbyterian has caused Plaintiff to

be unable to return to Presbyterian Hospital in any capacity without having severe emotional anxiety.

155.	Defendant's actions have caused Plaintiff to become depressed.

156.	Defendant made Plaintiff's work environment so uncomfortable that he no longer feels able to work at Presbyterian Hospital.

157.	The Defendant's conduct was extreme and outrageous in light of the circumstances.

158.	 The conduct of the Defendant was intentional or in reckless disregard of the Plaintiff.

159.	As a direct result of the Defendant's treatment of Plaintiff and conduct the Plaintiff's mental distress is extreme and severe.

160.	There is a causal connection between the Defendant's conduct and the Plaintiff's mental distress.

## COUNT VII:
## PRIMA FACIE TORT

161.	The Plaintiff re-alleges each and every allegation contained throughout this Complaint as if fully pled herein.

162.	In the alternative, the actions of the Defendant may have been lawful; however, Defendant terminated Plaintiff's privileges with malicious intent, which caused damages to the Plaintiff herein.

163.	Defendant's discharge of Plaintiff was not justifiable under all the circumstances.

164.	Defendant intentionally and maliciously interfered with Plaintiff's right to pursue and practice a lawful calling and trade

165.	The actions of Defendant were willful, wanton, and in reckless disregard of the Plaintiff's rights and of Public Policy, and such behavior should be deterred in the future.

166.	Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

167.  The Plaintiff herein demands a trial by jury.

WHEREFORE, Defendant's conduct was willful, reckless, wanton, and in bad faith and Plaintiff prays the Court for compensatory damages in an amount to be proven at trial, for punitive damages in an amount to be proven at trial, for a trial by jury and for such other and further relief as the Court may deem just and proper.

> Respectfully submitted,
>
> MICHAEL DANOFF &ASSOCIATES, P.C.
>
>
> Michael L. Danoff/ Ryan P. Danoff
> Attorneys for Plaintiff
> 1225 Rio Grande Boulevard, NW
> Albuquerque, NM 87104
> Telephone No.: (505)262-2383
> Facsimile No.: (505) 266-4330